# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COREY D. BUTLER #504300** | **CIVIL ACTION** |
| **versus** | **NO. 09-7473** |
| **STATE OF LOUISIANA** | **SECTION: "B" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Corey D. Butler, is a state prisoner incarcerated at the David Wade Correctional Center, Homer, Louisiana. On June 3, 2005, he was convicted of one count of second

degree kidnapping and one count of armed robbery in violation of Louisiana law.[1] He was sentenced on each count to a concurrent term of twenty years imprisonment without benefit of parole, probation, or suspension of sentence.[2] On October 28, 2008, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[3] The Louisiana Supreme Court then denied his related writ application on October 30, 2009.[4]

On November 19, 2009, petitioner filed the instant federal application for *habeas corpus* relief.[5] In support of his application, he asserts the following claims:

1. The trial court erred in admitting petitioner's statement into evidence because the prosecution failed to disclose the statement during discovery;

2. There was insufficient evidence to support petitioner's convictions; and

3. Petitioner's sentences are excessive.

The state concedes that petitioner's application is timely filed and that his claims are exhausted.[6]

---

[1] State Rec., Vol. VI of X, transcript of June 3, 2005, p. 181; State Rec., Vol. IV of X, minute entry dated June 3, 2005; State Rec., Vol. IV of X, jury verdict form.

[2] State Rec., Vol. VI of X, transcript of June 23, 2005, p. 5; State Rec., Vol. IV of X, minute entry dated June 23, 2005.

[3] State v. Butler, 997 So.2d 631 (La. App. 5th Cir. 2008) (No. 07-KA-1034); State Rec., Vol. X of X.

[4] State *ex rel.* Butler v. Louisiana, 21 So.3d 276 (La. 2009) (No. 2009-KH-0212); State Rec., Vol. X of X.

[5] Rec. Doc. 1.

[6] Rec. Doc. 11, p. 2.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme

Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

[A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

<u>Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> At trial, the following evidence was presented. Steven Mars testified that on the night of December 20, 2003, he noted a call on his pager from Defendant, an acquaintance he had known approximately two weeks. Thereafter, he and his cousin, Michael Coleman, drove to Taffy Drive in Marrero where they found Defendant and Lajohn Martin standing outside in front of a house. According to Mars, Defendant asked him to step out of the car. Mars exited the vehicle and Coleman was instructed to park the car. Defendant walked towards the side of the house at which time Martin approached Mars, pointed a gun at him, went through his pockets, and took his wallet and approximately $600-$700. Mars testified that the Defendant came back and stood behind him, but he was not sure if the Defendant went through his pockets.
>
> Martin then ordered Mars to walk back to his car where he forced Mars into the back seat while holding a gun to his back. Mars explained that Defendant was already next to the car by the time he was forced inside. Both Defendant and Martin subsequently entered the car. Defendant sat next to Mars in the back seat while Martin sat in the front passenger seat. Martin pointed a gun at Coleman and ordered him to drive. During the drive, Martin asked Mars if he had a gun in the car at which time Mars directed him to the center console. Martin retrieved the gun and gave it to Defendant, who then held the gun on Mars in the back seat.
>
> Martin directed Coleman to drive to Algiers where they stopped on a deserted road. Martin ordered the victims out of the car and forced them to lie face down on the ground. As soon as they lay down, shots were fired but neither Mars nor Coleman saw who fired the shots. Mars was shot several times and Coleman was grazed by bullets. After the shots were fired, Mars and Coleman both testified they were kicked. Defendant and Martin subsequently left the scene in Mars' car at which time Coleman ran down the street for help.

The police arrived on the scene and began their investigation. They were unable to interview Mars, who had already been transported to Charity in critical condition and unable to talk. The police interviewed Coleman who named the Defendant as one of the perpetrators. Coleman then led the police to the house on Taffy Drive where he believed the Defendant lived. Through a computer check, the police learned that Defendant and Martin lived at that residence. The police later prepared photographic lineups of Defendant and Martin and showed them to Coleman. Coleman positively identified Defendant and Martin as the perpetrators.

Two days after the incident, the Defendant's mother learned the police were looking for her son so she accompanied Defendant to the Detective Bureau. Defendant waived his rights and gave a statement in which he admitted holding a gun on Mars but denied any knowledge that Martin intended to rob and shoot the victims. He stated he received $100 from Martin after the incident. Defendant repeated most of his statement during his trial testimony.[7]

## Discovery Violation

Petitioner claims the trial court erred in admitting a prior statement into evidence because the prosecution failed to disclose the statement during discovery. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> By this assignment of error, the Defendant argues that the trial court erred in admitting a statement he allegedly made during the commission of the offense, indicating that he wanted to rob the victims because he had been robbed, because the State failed to timely disclose the statement. He asserts he filed a discovery request seeking the substance of any oral statement the State intended to offer at trial but did not receive notice of this statement until the middle of jury selection. Defendant contends he was prejudiced by the late disclosure of the statement because it was the only evidence that negated his theory of defense that he was unaware of his accomplice's intention to commit the charged offenses.

---

[7] State v. Butler, 997 So.2d 631, 633-34 (La. App. 5th Cir. 2008) (No. 07-KA-1034); State Rec., Vol. X of X.

The State responds that it disclosed the statement as soon as it became aware of it. The State maintains it learned of the statement the night before trial and provided notice, under La.C.Cr.P. art. 768, the next day during jury selection. The State further points out that it went beyond the notice requirements of Article 768 because it disclosed the contents of the statement, which was not required since the statement constituted *res gestae*. The State also asserts there was no discovery violation because La.C.Cr.P. art. 716(B) does not allow for the discovery of the contents of an oral statement. Moreover, the State argues that even if there was a discovery violation, no relief is warranted because the overwhelming evidence against Defendant rendered any violation harmless.

Approximately three months before trial, Defendant filed a motion for discovery requesting, among other things, "the substance of any oral statement which the State intends to offer in evidence made by the Defendant, whether before or after arrest, or in response to the interrogation by any person then known to the Defendant to be a law enforcement officer." One week before trial, the State filed discovery responses providing various requested items, including a statement Defendant gave to the police, and noted that it offered open file discovery.

After jury selection on the first day of trial, defense counsel advised the trial court that despite Defendant's pre-trial discovery requests, during *voir dire*, the State handed him a notice of intent to use a statement made by Defendant during the commission of the crime. Defense counsel immediately moved for exclusion of the statement from evidence on the basis that the State's untimely disclosure constituted a discovery violation.

The State replied it first learned of the statement the night before trial when it was first disclosed by the victim. The State noted that the victim had never been interviewed by the police because he had been hospitalized for approximately 30 days immediately after the incident because of his injuries. The State further asserted it was not even required to give notice because the statement was *res gestae*.

The trial court found Defendant received proper notice of the statement under La.C.Cr.P. art. 768 and denied Defendant's request to exclude the statement. The trial court noted that even if admission of the statement was a discovery issue, the State timely disclosed it.

On appeal, Defendant does not contest proper notice under La.C.Cr.P. art. 768, but rather argues that the statement should have been excluded from evidence based on the State's discovery violation.

The State is under a continuing obligation to promptly disclose additional evidence that may be discovered or that it decides to use as evidence at trial. La.C.Cr.P. art. 729.3. When a party to a criminal proceeding fails to comply with the provisions of the discovery articles, "the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate." La.C.Cr.P. art. 729.5(A); State v. Donnaud, 04-624, p. 11 (La.App. 5 Cir. 2/15/05), 896 So.2d 1151, 1158.

Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the State's case, and to allow a proper assessment of the strength of its evidence in preparing a defense. La.C.Cr.P. arts. 716-729; State v. Smith, 05-951, p. 12 (La.App. 5 Cir. 6/28/06), 934 So.2d 269, 277, writ denied, 06-2930 (La. 9/28/07), 964 So.2d 357. "When the defendant is lulled into misapprehension of the strength of the State's case through the failure of the prosecution to timely or fully disclose and the defendant suffers prejudice, basic unfairness results which constitutes reversible error." State v. Harris, 00-3459, p. 8 (La. 2/26/02), 812 So.2d 612, 617. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court's adverse ruling. State v. Smith, 99-1020, pp. 6-7 (La.App. 5 Cir. 2/29/00), 757 So.2d 74, 78, writs denied, 00-1017 (La. 3/30/01), 788 So.2d 439, and 01-854 (La. 11/21/01), 802 So.2d 631.

There is no duty on the part of the State to disclose information that it does not possess. Thus, the exclusion of evidence is not an available sanction when the State has promptly informed the defendant of the discovery or receipt of additional evidence, even where the new matter is uncovered at an inopportune time for the defense. State v. Williams, 448 So.2d 659, 664 (La. 1984).

In the present case, we find the State's disclosure of the statement was timely. It is not disputed that the State learned of the statement the night before trial and gave notice of the existence and contents of the statement the very next day and before opening statements. Defendant does not allege bad faith on the part of the State although he contends the State should have called him the night it found out or disclosed the statement prior to jury selection as opposed to waiting until the middle of jury selection. However, Defendant does not indicate how these few additional hours would

have changed his defense or how he was prejudiced by this minor delay. Additionally, Defendant did not indicate he needed more time to prepare a defense because of the belated discovery of the statement by requesting a continuance. See State v. Chaplain, 03-388, pp. 5-6 (La.App. 5 Cir. 7/29/03), 852 So.2d 1088, 1090.

Moreover, even if we were to agree that if the disclosure was not timely, Defendant has failed to show such prejudice from the late disclosure that reversal of the conviction would be necessary. The State presented other evidence to show Defendant possessed the requisite mental intent for the charged offenses. Both victims testified Defendant was the one who paged Mars the night of the incident and secured his presence at the Taffy residence. They also testified Defendant was a willing participant in the offenses and provided details of his involvement as outlined above. Although Defendant testified at trial that he followed the orders of Martin out of fear for his life, the evidence, even absent the statement, indicated the contrary. Thus, even without the statement that Defendant set the victims up out of revenge, a reasonable jury could have concluded Defendant was a willing participant in the incident. Defendant had notice of the inculpatory statement and its contents for one full day before opening statements, and in plenty of time to fully cross-examine Mars and Coleman about the oral statement. He even exposed the fact that Coleman had not previously told the police about Defendant's statement. See State v. Harris, 00-3459 (La. 2/26/02), 812 So.2d 612, (where the Supreme Court refused to reverse a conviction because of the state's untimely disclosure of a statement where the defendant did not show he was prejudiced by the delay).

Thus, we find no error in the trial court ruling that the disclosure of the statement, along with notice of the State's intent to use it as evidence, was timely made. Moreover, even if it were untimely, any discovery error was harmless because we find there was sufficient evidence in the record, of Defendant's willing participation in the crime, without the statement and no showing of prejudice to the Defendant.

This assignment of error lacks merit.[8]

To the extent that petitioner is arguing that the trial court misapplied *state* law in finding that there was no discovery violation, such a claim is not cognizable in this federal *habeas*

---

[8] State v. Butler, 997 So.2d at 637-40; State Rec., Vol. X of X.

*corpus* proceeding. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" <u>Trevino v. Johnson</u>, 168 F.3d 173, 184 (5th Cir. 1999) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)); <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted). Therefore, even if the state courts in fact misapplied the state laws concerning discovery, that alone would be of no moment in this proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1983).

Moreover, it is evident that there was no *federal* discovery violation because there is no general federal constitutional right to discovery in a criminal case. Therefore, a claim that a prosecutor violated state discovery rules simply is not cognizable on federal *habeas* review. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>Lorraine v. Coyle</u>, 291 F.3d 416, 441 (6th Cir. 2002); <u>Brooks v. Cain</u>, Civ. Action No. 06-1869, 2009 WL 3088323, at *10 (E.D. La. Sept. 21, 2009); <u>Smith v. Travis</u>, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009); <u>Burns v. Lafler</u>, 328 F.Supp.2d 711, 723 (E.D. Mich. 2004).

In the instant case, petitioner clearly frames his claim as one grounded in a purported violation of state discovery rules. <u>See, e.g.</u>, Rec. Doc. 1-1, p. 8. However, out of an abundance of caution, the Court makes three additional observations in the event the claim is more broadly construed.

First, as the state notes in its response, the claim could perhaps be construed as a more expansive "notice-of-evidence due process claim" of the type discussed in Wooten v. Thaler, 598 F.3d 215 (5th Cir. 2010). In Wooten, the Fifth Circuit observed that "there is a line of authority that leaves open the possibility that a defendant who is *deliberately* misled as to the full weight and import of the state's evidence might have a cognizable due process claim." Id. at 219. However, the Fifth Circuit held that, assuming that such a constitutional right does in fact exist, it would protect against only deliberate misrepresentations. Therefore, "[s]o long as the evidentiary 'misrepresentation' was unintended ..., there is no due process violation." Id. at 220-21. Here, there is no suggestion, much less evidence to establish, that there was intentional misrepresentation of the prosecution's evidence. Rather, the record reflects that the new statement first came to light as the victim was being interviewed immediately prior to trial, and the statement was revealed to the defense the following day during *voir dire*. There is nothing inherently nefarious or improper in these circumstances, and it should have been no surprise to defense counsel that such an interview would take place or that additional inculpatory details could possibly be revealed during the interview.

Second, the Court expressly notes that the actions of the prosecutors did not run afoul of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, which dictate that material evidence favorable to the defense may not be suppressed by the prosecutor. Here, the statement at issue was not *favorable* to the defense. It was neither exculpatory nor useful for purposes of impeachment; on the contrary, it was inculpatory. The mere fact that it might have been *helpful* to the defense in preparing for trial is of no moment. See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995)

("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense."). Moreover, in any event, the statement was not "suppressed." The statement was disclosed to the defense within one day of the state becoming aware of it. Because it came to light during trial in sufficient time for defense counsel to effectively prepare for its use, it was not "suppressed" in violation of <u>Brady</u>. <u>See, e.g.</u>, <u>Lawrence v. Lensing</u>, 42 F.3d 255, 257 (5th Cir. 1994); <u>United States v. McKinney</u>, 758 F.2d 1036, 1049-50 (5th Cir. 1985); <u>Smith</u>, 2009 WL 1704335, at *10; <u>Stogner v. Cain</u>, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); <u>Baker v. Cain</u>, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

Third, even if the claim is simply construed as a challenge to the state court's evidentiary ruling allowing admission of the statement into evidence, the claim fares no better. The United States Fifth Circuit Court of Appeals has noted that "[i]n habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." <u>Little v. Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998). Rather, the Court of Appeals has held:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

<u>Neal v. Cain</u>, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); <u>see also</u> <u>Little</u>, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). Here, the statement was properly admitted for the reasons noted by the state court. Moreover, even if the evidence had been wrongly admitted, which it was not, it nevertheless cannot be said to have played a crucial, critical, and highly significant role

in petitioner's conviction in light of the other overwhelming evidence against him. Accordingly, petitioner cannot demonstrate that the admission of the statement resulted in a denial of fundamental fairness.

For all of the foregoing reasons, the Court finds that petitioner has not demonstrated that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

### Sufficiency of the Evidence

Petitioner next claims that there was insufficient evidence to support his convictions. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> In this assignment of error, the Defendant argues that the evidence was insufficient to support his convictions for second degree kidnapping and armed robbery. Defendant argues the State failed to prove he was a principal to the second degree kidnapping and armed robbery of Steven Mars because it failed to prove he was "concerned in the commission of the crime" as required by La. R.S. 14:24. He asserts that the evidence shows he had no part in planning the crimes and that he only acted at the direction of Martin out of fear for his life. He contends Martin was the one in control and he was simply a pawn used by Martin in the commission of the offenses.
>
> The State argues to the contrary that the evidence shows Defendant actively, knowingly, and willingly participated in the offenses against Mars. The State contends that the evidence shows Defendant stood next to Mars while Martin held a gun on Mars and rummaged through his pockets, he willingly entered the vehicle, he held a weapon on Mars during the car ride, he kicked one of the victims after the shooting to see if he was alive, and he received $100 from the robbery. Following the incident, he didn't notify anyone, report it or send assistance for the victims. The State contends this evidence sufficiently proves Defendant was a principal to the crimes.

The standard of review when considering whether the evidence is sufficient to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must "determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." State v. Mitchell, 99-3342, p. 7 (La. 10/17/00), 772 So.2d 78, 83.

Principals are defined, in La. R.S. 14:24, as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." However, this rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-893, p. 4 (La. 2/3/94), 631 So.2d 427, 428; State v. Knowles, 392 So.2d 651 (La. 1980). Merely being present at the scene is not enough to find a person "concerned in the commission of a crime." Pierre, 93-893 at 4, 631 So.2d at 428; State v. Schwander, 345 So.2d 1173 (La. 1977). "[A]n individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." Pierre, 93-893 at 4, 631 So.2d at 428; State v. Holmes, 388 So.2d 722, 726 (La. 1980). The mental state of one defendant may not be imputed to another defendant. State v. Holmes, 388 So.2d 722 (La. 1980).

Defendant was convicted of second degree kidnapping and armed robbery. Second degree kidnapping is defined, in pertinent part, as the forcible seizing and carrying of any person from one place to another when the perpetrator is armed with a dangerous weapon or the victim is physically injured. La. R.S. 14:44.1. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64; State v. Carter, 98-24, p. 15 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, 708 writ denied, 98-1767 (La. 11/698), 727 So.2d 444.

Defendant claims he was not a willing participant to these crimes and, thus, did not have the requisite mental intent to be

considered a principal to these crimes. Upon review, we find ample evidence in the record to the contrary.

The testimony of the victim, Steven Mars, provided evidence from which the jury could have concluded that Defendant was a principal in the crimes, contrary to the Defendant's statement and testimony. Mars testified that Defendant was the one who beeped him twice on the night of the incident. Mars also stated that Defendant instructed him to exit his vehicle when he and Coleman arrived at the Taffy residence. He testified that Defendant stood behind him while Martin held him at gunpoint and took his money and wallet. Mars also stated Defendant was already at the car when he was led to the car at gunpoint by Martin. He testified that Defendant got into the car without any instruction from Martin.

Mars further stated Defendant took the gun from Martin during the ride and held it on Mars without being told to do so by Martin. He testified that during the ride Martin asked the victims if they wanted to know why Defendant "'did this to you.'" According to Mars, Defendant responded by saying, "[a] n*gg*r robbed me, so f* * * it, I'm going to get somebody else."[FN3] Mars also testified that Defendant stood over Coleman when they reached their final destination and held a gun on Coleman without Martin ordering him to do so.

[FN3] In assignment of error number one, Defendant challenges the admissibility of this statement. When determining the sufficiency of the evidence, the reviewing court looks at all the evidence, both admissible and inadmissible. As stated above, the rationale is that when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal. The reviewing court then considers whether there was a trial error, such as admitting inadmissible evidence. If the reviewing court determines there was trial error, which was not harmless, the defendant is entitled to a new trial. In such circumstances, the defendant is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. McClain, 04-98, p. 6 (La.App. 5 Cir. 6/29/04), 877 So.2d 1135, 1139, writ denied, 04-1929 (La. 12/10/04), 888 So.2d 835.

Mars' testimony was corroborated by the other victim. Coleman added that it was the Defendant who told him to lie face down before the shooting. Coleman specifically testified that he thought Defendant was a willing participant throughout the incident and that Defendant was not ordered to do anything during the incident. Although this statement contradicted his statement to the police, that Defendant was following Martin's orders, Coleman explained he made the first statement because Martin was the one with the gun and did most of the talking. He expressly testified he believed Defendant planned the incident.

Defendant gave a statement to Detective Dax Russo after the incident in which he, according to Detective Russo, tried to "distance[] himself as far as possible" from the crime. In his statement, Defendant stated that Martin beeped Mars for "some weed." He stated Mars came over and got out of his car at which time Martin pulled a gun on Mars and ordered Mars into the car. Defendant maintained he was unaware of Martin's plan. Defendant admitted he held a gun on Mars during the drive but stated he did so only after Martin handed the gun to him. He further admitted that he stood over the victims with a gun after Martin ordered the victims out of the car and told them to lie face down on the ground. Defendant also confessed he kicked one of the victims after Martin shot them to see if the victim was alive.

According to Defendant's statement, he and Martin got back into the car after Martin shot the victims and drove to a gas station, where Martin pumped gas into the back seat. He stated Martin parked the car next to an apartment complex and threw a match into the car. Defendant stated that he returned the gun to Martin and Martin gave him $100.

Defendant's trial testimony corroborated most of his statement, with a few inconsistencies, and offered more details about the incident. Defendant testified he got into the car after Martin ordered Mars into the car because Martin told him to get in and he was scared. He explained he held a gun on Mars during the drive only because Mars told him to and he was scared. Defendant testified that he never directed the victims and that it was Martin who gave all of the directives. At trial, Defendant acknowledged that he never told Detective Russo during his statement that he was scared of Martin.

After being presented with all of the testimony, the jury must have found the victims' testimony regarding Defendant's involvement in the incident more credible than the Defendant's because they returned a guilty verdict.

It is the role of the fact-finder to weigh the credibility of the witnesses. The appellate court will not second-guess credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La. 1983). In evaluating credibility, the trier of fact, when faced with a conflict, is free to accept or reject, in whole or in part, the testimony of any witness. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a conviction. State v. Marshall, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369; State v. Legrand, 02-1462, p. 5 (La. 12/3/03), 864 So.2d 89, 94.

Considering the testimony of both victims, Defendant's actions before, during and after the armed robbery and the kidnapping, and in the absence of internal contradiction or irreconcilable conflict with physical evidence, we find the jury could have reasonably inferred that Defendant had the requisite mental intent to commit second degree kidnapping and armed robbery.

Although Defendant did not personally take anything from Mars during the armed robbery, a person need not hold the weapon or perform the taking to be guilty of armed robbery under the law of principals. See State v. Jackson, 99-1256, p. 6 (La.App. 5 Cir. 7/25/00), 767 So.2d 848, 851-52. The evidence shows Defendant aided Martin in the robbery by paging Mars and securing Mars' presence at the Taffy Street residence immediately before the robbery. Additionally, Defendant stood by and watched while Martin robbed Mars at gunpoint. He neither said nor did anything to prevent it. Defendant then assisted Martin in kidnapping the victims from the Taffy Street residence to a deserted road in Algiers by getting in the car and holding a gun on Mars during the drive. Furthermore, he subsequently shared in the proceeds of the robbery.

Contrary to Defendant's claim, nothing in the record suggests he was not a willing participant in these offenses except his own testimony. Thus, viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved the essential elements of second degree kidnapping and armed robbery beyond a reasonable doubt.[FN4]

[FN4] See State v. Saylor, 01-451, pp. 8-10 (La.App. 5 Cir. 11/27/01), 802 So.2d 937, 942-43, writ denied, 01-3406 (La. 10/4/02), 826 So.2d 1122. This Court found sufficient evidence to uphold the defendant's conviction for armed robbery even though the

defendant was not the gunman and he claimed he unwittingly drove the gunman to the crime scene and waited in the car while the gunman got out of the car, pointed a gun at the victims, and took their money. It was noted that the defendant drove away after the gunman returned to the vehicle, he took no actions to prevent the crime, which occurred in his presence, and he did not leave the scene until his accomplice was back in the vehicle. This Court also noted the conflicting testimony between the defendant and the victim where the victim testified the defendant appeared to keep watch during the commission of the crime.

This assignment of error lacks merit.[9]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[9] State v. Butler, 997 So.2d at 634-37; State Rec., Vol. X of X.

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).

Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, No.08-30721, 2010 WL 1427372 (5th Cir. Apr. 9, 2010).

There is no question that the state established that the crimes of second degree kidnapping and one count of armed robbery had been committed. Moreover, petitioner's identity is not in question; he admitted that he was present at the crime scene. The only issue which is disputed is whether he was a willing participant and, therefore, guilty as a principal in the commission of the crimes. As the state court noted, it is clear that, on this point, the jurors found the victims to be credible and petitioner to be untruthful. Federal *habeas corpus* relief is not warranted where, as here, a petitioner challenges the sufficiency of the evidence based on such credibility assessments. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson[ v. Virginia, 443 U.S. 307 (1979)], the assessment of the credibility of witnesses is generally beyond

the scope of review."); <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); <u>McCowin v. Scott</u>, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the <u>Jackson</u> standard for habeas relief."); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 (E.D. La. Mar. 8, 2010).

In light of the foregoing, the Court finds that petitioner has not demonstrated that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

<u>Excessive Sentences</u>

Lastly, petitioner claims that his sentences are excessive. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> By this assignment of error the Defendant argues that each of his 20-year sentences for second degree kidnapping and armed robbery is excessive. He argues that the sentences are too severe for a 16-year-old first offender. Defendant acknowledges the trial court considered La.C.Cr.P. art. 894.1, but contends it erred in considering the existence of multiple victims since he was only convicted of victimizing one person. He also asserts the trial court failed to consider mitigating factors such as his young age, his lack of a criminal history, and the fact that he personally did not use threats or actual violence at any time during the commission of the offenses.
>
> The State responds that the trial court was aware of Defendant's age and background. Further, the Defendant received less than one-half and one-fourth, respectively, of the statutory maximum sentences allowed for each of his convictions. The State maintains that these sentences are not disproportionate under the existing jurisprudence.
>
> The sentencing range for second degree kidnapping is five to 40 years and the sentencing range for armed robbery is ten to 99 years. La. R.S. 14:44.1 and La. R.S. 14:64. Thus, the 20-year

sentence for the second degree kidnapping conviction constitutes a mid-range sentence, and the 20-year sentence for the armed robbery conviction is less that one-fourth of the sentencing range for that offense.

In imposing the 20-year sentences, the trial judge referenced La.C.Cr.P. art. 894.1 and stated that the crimes were committed with a weapon, there was a risk of death or great harm to more than one person, and there were threats of, as well as actual, violence used in the commission of the offenses. The trial court noted Defendant participated in the crimes as a principal and was an active participant who willingly held a weapon on Mars. The court further commented that Defendant was not concerned about Mars and did not call for help as Mars lay on the road severely injured. The trial court also noted Defendant failed to tell anyone what happened despite having an opportunity to do so the following day.

Immediately after sentencing, Defendant moved for reconsideration of his sentences on the basis they were excessive considering his young age, lack of criminal history, and minimal participation in the offenses. The trial court denied his motion.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Stewart, 03-920, p. 16 (La.App. 5 Cir. 1/27/04), 866 So.2d 1016, 1027-28, writ denied, 04-449 (La. 6/25/04), 876 So.2d 832.

Defendant's 20-year sentence for armed robbery is comparable to other sentences imposed on similarly situated defendants and is well below the 35 to 50-year range the Louisiana Supreme Court has found acceptable for first offenders convicted of armed robbery. See State v. Jefferson, 40,439, pp. 5-6 (La.App. 2

Cir. 1/27/06), 920 So.2d 984, 987-88, (the court affirmed a 30-year armed robbery sentence for a first offender who claimed he was his co-defendant's pawn in the robbery); State v. Augustine, 555 So.2d 1331, 1332 (La. 1990), (the Supreme Court upheld an 18-year-old, first offender's 40-year sentence for armed robbery); and State v. Square, 433 So.2d 104, 110 (La. 1983), (where the Supreme Court upheld a 22 year old, first offender's 25-year sentence for armed robbery even though there was no personal injury to the victim).

Defendant's 20-year sentence for second degree kidnapping is likewise within the jurisprudentially accepted range. See State v. Mathieu, 06-946, pp. 21-23 (La.App. 5 Cir. 5/29/07), 960 So.2d 296, 309-10, writ denied, 07-1424 (La. 2/1/08), 976 So.2d 714, (this Court upheld a first-time offender's 30-year sentence for second degree kidnapping); State v. Sullivan, 41,236, p. 3 (La.App. 2 Cir. 8/23/06), 939 So.2d 516, 518, (the defendant received a 15-year sentence for second degree kidnapping where he pointed a gun at the victim and fired but missed); and, State v. Brown, 41,883 (La.App. 2 Cir. 4/4/07), 956 So.2d 53, (a 19-year-old first felony offender's 20-year sentence for second degree kidnapping was found not to be excessive where the defendant had used a gun and threatened the lives of three victims).

In the present case, Defendant held a gun on Mars during the kidnapping, Mars was shot multiple times and left in an isolated area, presumably to die. While the evidence does not show Defendant was the shooter, he stood over the victims with a gun and stood idly by while Martin shot the victims if he didn't. Thereafter, Defendant abandoned the victims, one of whom was seriously wounded and did not call for help for the victims.

The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. Considering the nature of the offenses, including the violence, danger to life and the purposelessness of the shooting, as well as the sentences imposed for similar crimes, we find that Defendant's mid-range 20-year sentence for second degree kidnapping and his low-rang [sic] 20-year sentence for being a principal to armed robbery are not grossly disproportionate to the offenses nor do they shock our sense of justice. Accordingly, we find they are not constitutionally excessive.

This assignment of error lacks merit.[10]

---

[10] State v. Butler, 997 So.2d at 640-41; State Rec., Vol. X of X.

To the extent petitioner is arguing that his sentences are excessive or otherwise inappropriate under Louisiana law, that claim is not cognizable in this federal proceeding.  As noted previously, federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentences under state law.

Further, to the extent that petitioner is claiming that his sentences are excessive under the Eighth Amendment of the United States Constitution, his claim is without merit.  In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."  Gonzales, 121 F.3d at 942 (quotation marks omitted).  "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare."  Id.  (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In light of the Rummel finding that a *life* sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, this Court cannot conclude that petitioner's concurrent twenty-year sentences for the grave crimes of second degree kidnapping and armed robbery, where both sentences fall far below the maximum sentences available for such crimes, are grossly disproportionate. In that the sentences are not grossly disproportionate, this Court's "inquiry is

finished." <u>Gonzales</u>, 121 F.3d at 942. Because petitioner's sentences are not so excessive as to violate the United States Constitution, this claim must fail.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition of **Corey D. Butler** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this thirtieth day of April, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.